# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-22148-DPG

ROSH CHODESH II LIMITED
PARTNERSHIP, *et al.*,

      Plaintiffs,

v.

JAN S. WIMPFHEIMER, *et al.*,

      Defendants.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon the Joint Motion to Dismiss (ECF No. 30) filed by

Defendants Madison Gold, LLC ("Madison Gold"), Jan S. Wimpfheimer ("Wimpfheimer"), and

Schwell Wimpfheimer & Associates, LLP's ("SWA") (together, the "Moving Defendants").

Plaintiffs Rosh Chodesh II Limited Partnership; Joshua Hermelin, successor trustee on behalf of

the Snow White Trust II UAD July 3, 2020; David Hermelin; Michael Hermelin; and Joshua

Hermelin filed a Response (ECF No. 40), to which the Moving Defendants filed a Reply (ECF No.

43).  The matter has been referred to the undersigned United States Magistrate Judge by the

Honorable Darrin P. Gayles, United States District Judge, pursuant to 28 U.S.C. § 636 and the

Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for a ruling on all

pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters.

(ECF No. 48).  Having considered the Joint Motion, Response, Reply, the record as a whole, and

being otherwise duly advised in the premises, the undersigned respectfully **RECOMMENDS** that

the Joint Motion be **GRANTED** for the reasons that follow.

1

## I.     BACKGROUND

This action arises from business and investment dealings between Plaintiffs and the Moving Defendants.  Plaintiffs filed this suit in this Court on June 9, 2023, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332 and asserting nine claims for relief arising under state law.  (ECF No. 1).  On July 7, 2023, the District Court entered an Omnibus Order, noting that Plaintiffs had failed to sufficiently plead the citizenship of Defendants and directing Plaintiffs to file an Amended Complaint.  (ECF No. 15).  On July 31, 2023, Plaintiffs filed their Amended Complaint asserting claims under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331.  (ECF No. 24) ("Am. Compl.").  The Amended Complaint now asserts state law claims arising under the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

Broadly, Plaintiffs allege in their Amended Complaint that they invested $3,050,000.00 with Madison Gold based upon false and misleading representations made by Madison Gold's principal, Wimpfheimer, who prepared agreements relating to the investments through his law firm, SWA.  According to the Amended Complaint, Madison Gold and Wimpfheimer made inaccurate representations regarding the returns Plaintiffs could expect from their investments and misrepresented that Plaintiffs would profit from their investments.  Plaintiffs also claim they were denied access to financial records upon demand when they expressed concerns.  Plaintiffs claim that Defendants have continued to hold Plaintiffs' investment funds and have prevented Plaintiffs from accessing, withdrawing, or reclaiming those funds.

Plaintiffs allege that Madison Gold, which was under the management of Wimpfheimer and a non-party business partner, provided syndicated funding to Defendants East Hudson Capital ("East Hudson") and White Road Capital ("White Road").  The relationship between Madison

Gold and East Hudson was memorialized in Master Participation Agreements prepared by Wimpfheimer on March 25, 2019 and December 26, 2021, under which Madison Gold would contribute syndicated funding to East Hudson for East Hudson to invest in merchant accounts. Wimpfheimer also prepared a Master Participation Agreement between Madison Gold and GFE NY, LLC (an alleged alter ego of White Road) on April 1, 2019 to, similarly, provide syndicated funding for White Road to invest in merchant accounts.

Pursuant to the Master Participation Agreements, Madison Gold was a co-investor in transactions that East Hudson and White Road entered into with merchant clients in which East Hudson and White Road would purchase the merchant clients' account receivables (future credit card, debit card, bank card, and/or charge card, checks, and cash receivables).   Under the agreements, East Hudson and White Road were required to provide Madison Gold with access to an online portal where the status of transactions would be updated weekly or otherwise provide Madison Gold with weekly reports containing information related to purchase of the receivables. Madison Gold's contributions to the foregoing transactions were made through a series of tranches identified as sequentially lettered "Series" for reporting and accounting purposes.   Each series represented a particular type of transaction satisfying distinct underwriting criteria.

Plaintiffs assert that Madison Gold and Wimpfheimer made numerous misrepresentations to Plaintiffs that induced Plaintiffs to invest with Madison Gold.  The Amended Complaint asserts the following misrepresentations and nondisclosures.

Madison Gold and Wimpfheimer misrepresented the profitability of investing and the strength of the relationship between Madison Gold and East Hudson when soliciting Plaintiffs to be investors in Series I.  As a result, in 2022 and early 2023, Plaintiffs invested $3,050,000.00 in that series.  Madison Gold and Wimpfheimer represented to Plaintiffs that the more Plaintiffs

invested, the more their return would be.  For example, in May 2022, Wimpfheimer on behalf of himself, and on behalf of Madison Gold, induced Plaintiffs to increase the amount they invested to increase Plaintiffs' potential return.  WhatsApp messages from May 23, 2022 reproduced in the Amended Complaint suggest Wimpfheimer informed Plaintiff Michael Hermelin that the return on a $500,000.00 investment would be 15 percent and that the return on an investment of $2,000,000.00 or more would be 18 percent.  (Am. Compl. ¶ 45).  Before investing, Plaintiffs also requested and were promised by Wimpfheimer an audit of Madison Gold's financials within the next 6 months as soon as the report was ready.

Madison Gold and East Hudson also failed to disclose a dispute between East Hudson and Madison Gold.  According to Plaintiffs, starting no later than the first quarter of 2022, two non-party entities controlled by Wimpfheimer and a business partner had failed to meet funding requirements for East Hudson, culminating in a lawsuit in May 2023.

Further, Wimpfheimer and Madison Gold failed to disclose to Plaintiffs that White Road had assumed all rights to Madison Gold.  According to Plaintiffs, White Road comingled funds it received from Madison Gold and diverted invested funds to East Hudson and other third parties.  Plaintiffs did not learn of the fund diversions until May 2023 after they had invested with Madison Gold.

Wimpfheimer also failed to disclose that entities affiliated with Madison Gold had engaged in criminally usurious lending practices, in violation of New York Penal Law § 190.40.  According to Plaintiffs, East Hudson alleged in a May 2023 lawsuit that Wimpfheimer and entities he operated had charged interest rates of between 41.67 and 66.67 percent on loans made between 2018 and 2023.

Plaintiffs further allege that Wimpfheimer, as an attorney and partner of the law firm SWA, undertook joint representations without disclosing conflicts of interest and without advising Plaintiffs to seek the advice of independent counsel.  According to Plaintiffs, Wimpfheimer undertook to negotiate and structure the business relationship on behalf of Madison Gold, East Hudson, and Plaintiffs despite holding ownership interests in East Hudson and White Road.  The Amended Complaint suggests that Wimpfheimer acted as an attorney for all parties involved in the transactions.  (Am. Compl. ¶ 72).  Plaintiffs assert that Wimpfheimer used his law firm email address when communicating with Plaintiffs in his role as an attorney but used a separate email address when he was communicating about matters in his role as a promotor and agent of Madison Gold.  Plaintiffs contend that SWA prepared non-disclosure agreements that Madison Gold, Wimpfheimer, and Wimpfheimer's business partner insisted Plaintiffs sign to intentionally inhibit Plaintiffs' ability to seek remedies for any wrongdoing.

And, Plaintiffs assert they were misled into believing that their $3 million investment was only a small portion of the overall $100 million invested when, instead, their $3 million investment represented the vast majority of funds invested.

In addition to the foregoing misrepresentations, Plaintiffs contend that Wimpfheimer engaged in self-dealing.  Despite contractual provisions mandating that Wimpfheimer and his business partner would not receive payment until Plaintiffs first received full return of their investment principal, Wimpfheimer and his business partner paid themselves large distributions, concealed this fact, and obtained undisclosed "spreads" at Plaintiffs' expense.

Plaintiffs claim they would not have invested had they been made aware of Defendants' misrepresentations.  Instead, they assert that Wimpfheimer used his position of trust as a representative of Madison Gold, East Hudson, and SWA to induce Plaintiffs' investment.

Based on the foregoing, Plaintiffs assert thirteen claims against Defendants: (1) a civil racketeering claim against Wimpfheimer and Madison Gold, under the federal RICO Act, 18 U.S.C. § 1962(c), predicated on "no fewer than fifty (50) acts of wire fraud" but more specifically three predicate acts, including two instances of wire fraud under 18 U.S.C. § 1343 and one instance of money laundering under 18 U.S.C. §§ 1965, 1957, (Am. Compl. ¶¶ 111, 125) ("Count I"); (2) conspiracy to commit civil racketeering, against Wimpfheimer, Madison Gold, and SWA, in violation of 18 U.S.C. § 1962(d) ("Count II"); (3) fraudulent inducement against Wimpfheimer and Madison Gold; (4) breach of fiduciary duty against Wimpfheimer; (5) negligent misrepresentation against Wimpfheimer and Madison Gold; (6) conversion against Wimpfheimer and Madison Gold; (7) recission of contract against Madison Gold; (8) breach of contract in the alternative to recission of contract, against Madison Gold; (9) negligent retention and supervision of Wimpfheimer by SWA, against SWA; (10) violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501 *et seq.*, against Madison Gold and Wimpfheimer; (11) violations of Section 18-305 of the Delaware Limited Liability Company Act, against Madison Gold; (12) a request for an accounting against Madison Gold, East Hudson, and White Road; and (13) a request for the imposition of a constructive trust and disgorgement, against Madison Gold, East Hudson, and White Road.

Now, Madison Gold, Wimpfheimer, and SWA move to dismiss this action against them for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), or for forum non conveniens, under Federal Rule of Civil Procedure 12(b)(3).  They also seek dismissal of Plaintiffs' RICO claim in Count I and RICO conspiracy claim in Count II for noncompliance with the heightened pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b).  If the Court dismisses Counts I and II, the Moving Defendants further request that the Court decline to

exercise supplemental jurisdiction under 28 U.S.C. § 1367 and that the Court dismiss Plaintiffs'
remaining state-law claims.  Finally, Madison Gold, Wimpfheimer, and SWA argue that Plaintiffs'
various state-law claims should be dismissed for pleading deficiencies and for failure to state a
claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    DISCUSSION

The Court must address the Moving Defendants' challenge to jurisdiction before turning
to the merits.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31
(2007) ("[A] federal court generally may not rule on the merits of a case without first determining
that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties
(personal jurisdiction).").  Accordingly, the Court first turns to personal jurisdiction.  *See id.* at 431
(noting that, because there is "no mandatory 'sequencing of jurisdictional issues,'" a court "may
dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction").

### A.    Personal Jurisdiction

Movants seek dismissal for lack of personal jurisdiction, pursuant to Federal Rule of Civil
Procedure 12(b).  They assert that the Amended Complaint fails to allege sufficient facts to
establish a *prima face* case of personal jurisdiction under Florida's long-arm statute, Fla. Stat.
§ 48.193.  As to SWA and Wimpfheimer, the Moving Defendants assert that the facts alleged in
the Amended Complaint do not show SWA and Wimpfheimer transacted business in Florida,
maintained an office here, committed a tort in Florida, or are parties to contracts with jurisdictional
waivers and forum selection clauses requiring that this action be brought in Florida, as required to
exercise jurisdiction under Florida's long-arm statute.  The Moving Defendants assert that acts
Wimpfheimer committed on behalf of Madison Gold cannot be imputed to him for personal
jurisdiction in light of the "corporate shield" doctrine and Florida's long-arm statute.  As to due

process, the Moving Defendants assert that the Amended Complaint fails to allege that SWA had any contacts with Florida, let alone minimum contacts.

Advancing facts not pled in the Amended Complaint, Plaintiffs respond that the Amended Complaint adequately alleges personal jurisdiction under Florida's long-arm statute. They assert that Wimpfheimer engaged in the violations alleged from Madison Gold's office in Florida. Plaintiffs fault the Moving Defendants for not advancing evidence to rebut the *prima facie* allegations of personal jurisdiction in the Amended Complaint.

### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In order for the district court to exercise personal jurisdiction over the defendants, an applicable statute must first confer personal jurisdiction. Then, the court must determine that the exercise of jurisdiction comports with due process." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021) (citing *SEC v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020)).

"When a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, the district court must hear and decide the issue 'before trial unless the court orders a deferral until trial.'" *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021) (quoting Fed. R. Civ. P. 12(i)). In the alternative to holding a pretrial evidentiary hearing to assess whether personal jurisdiction has been established by a preponderance of the evidence, federal courts may, as the Court does here, review the motion to dismiss under a *prima facie* standard considering only the complaint and affidavits.[1] *Id.*

---

[1] Whether the court considers the motion to dismiss under a *prima facie* standard based on the complaint and any affidavits or conducts an evidentiary hearing to weigh evidence and determine the credibility of witnesses—"the plaintiff must eventually, by the close of the evidence, establish personal jurisdiction by a preponderance of the evidence." *AcryliCon*, 985 F.3d at 1364.

"A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). To make this determination, courts engage in a three-step burden-shifting analysis in which "[t]he court accepts as true all unchallenged facts in the plaintiff's complaint, and then considers all affidavit evidence proffered by the parties." *AcryliCon*, 985 F.3d at 1364. "First, the plaintiff 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 848 (11th Cir. 2020) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (observing that, at this first stage, courts accept the allegations in a complaint as true). "Second, if the complaint alleged sufficient facts, and 'the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Diulus*, 823 F. App'x at 848 (quoting *Mazer*, 556 F.3d at 1274). "Third, '[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). The Court must assess its personal jurisdiction over each defendant separately. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### 2.  Jurisdiction Under RICO's Nationwide Service of Process Provision

The Court makes three observations. First, as noted in the Reply, the Moving Defendants have not advanced evidence to rebut personal jurisdiction because they argue that the Amended Complaint, as a starting matter, fails to allege facts sufficient to confer personal jurisdiction. At

this stage the Court accepts the facts alleged in the Amended Complaint as true for purposes of assessing personal jurisdiction.  The Court further disregards any new facts proffered via attorney argument in Plaintiffs' Response, unsupported by affidavit, that are not pled within the four corners of the Amended Complaint

Second, the Joint Motion does not actually seek dismissal for lack of personal jurisdiction as to Defendant Madison Gold.  Within the Joint Motion, the Moving Defendants generally assert that Plaintiffs have not established a *prima facie* case of personal jurisdiction "as to any defendant." (ECF No. 30 at 3).  However, the Joint Motion advances no arguments specific to Madison Gold and instead only argues for the dismissal of this action with respect to SWA and Wimpfheimer. Having failed to advance arguments in favor of dismissal, Madison Gold has waived its objection to personal jurisdiction.  In addition, it cannot reasonably be disputed that this Court has general personal jurisdiction over Madison Gold: it maintains its principal place of business in the Southern District of Florida.  *See* Fla. Stat. § 48.193(2); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" (alteration and omission in original)).

Third, more importantly, neither side has addressed the impact of RICO's nationwide service provision, 18 U.S.C. § 1965(d), on the exercise of personal jurisdiction in this case. Plaintiffs have asserted a substantive RICO claim against Wimpfheimer and Madison Gold in Count I, and a RICO conspiracy claim against Wimpfheimer, Madison Gold, and SWA in Count II. Yet in the jurisdictional averments, the Amended Complaint alleges only that *venue* is proper in the Southern District of Florida under 18 U.S.C. § 1965(a) and/or 1965(b), because Plaintiffs allege the Moving Defendants committed federal civil RICO violations.  (Am. Compl. ¶ 25).  The Amended Complaint does not allege personal jurisdiction over the Moving Defendants pursuant

to RICO's nationwide service of process provision, 18 U.S.C. § 1965(d).[2]  It instead invokes personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193.  *See* (Am. Compl. ¶ 23). In briefing, the Parties likewise argue personal jurisdiction within the context of only Florida's long-arm statute and the Fourteenth Amendment.

The Court nonetheless assesses personal jurisdiction under RICO's nationwide service provision given the RICO claims' impact on personal jurisdiction.  *See Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1374–75 (S.D. Fla. 2012) (analyzing personal jurisdiction under RICO's nationwide service provision even though the parties had "[i]nexplicably . . . limited their discussion of personal jurisdiction to the traditional analysis applied to a state's long-arm statute and the Fourteenth Amendment's requirement of 'minimum contacts'").[3]

### a.     Section 1965(d)

The District Court may properly exercise personal jurisdiction over Wimpfheimer and SWA pursuant to 18 U.S.C. § 1965(d) and Federal Rule of Civil Procedure 4(k)(1)(C).

When, as here, "a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction over a person *served according to the statute*."  *Don't Look Media*, 999 F.3d at 1292 (emphasis in original).  The RICO statute's nationwide service provision provides:

> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

---

[2]  In the Eleventh Circuit, § 1965(d) provides for nationwide service of process.  *Don't Look Media*, 999 F.3d at 1293 n.3 (noting a split in authority across Circuits as to whether § 1965(b) or 1965(d) provides for nationwide service of process for RICO defendants).

[3]  As in *Koch*, Plaintiffs here have also inexplicably invoked RICO's venue provisions but not RICO's nationwide service provision.  *See Koch*, 374 F. Supp. 2d at 1374 n.2 (alterations in original) (observing, similar to the instant case, that "[t]he only reference to personal jurisdiction under the RICO Act is in paragraph seventeen of the Complaint, wherein Plaintiff states that '[v]enue and personal jurisdiction are proper in this district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) and (b) . . . .  In accordance with 18 U.S.C. § 1965(b), the ends of justice require that all defendants be brought before this Court.").

18 U.S.C. § 1965(d).  The Court may exercise personal jurisdiction pursuant to this nationwide service provision only "insofar as an asserted federal claim is not wholly immaterial or insubstantial."  *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  In other words, a statutory basis to exercise personal jurisdiction under § 1965(d) exists if Plaintiffs have stated "colorable" RICO claims.  *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1144 (S.D. Fla. 2019).  This is distinct from whether Plaintiffs have plausibly alleged their RICO claims under Rule 12(b)(6), instead asking whether the RICO claims are frivolous or unintelligible.  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1210 (S.D. Fla. 2021) (citing *Dawkins v. Glover*, No. 1:08-CV-0039-JEC, 2008 WL 11423996, at *4 (N.D. Ga. Aug. 14, 2008)).

Applied here, the docket reflects that SWA was served within a United States judicial district, specifically by service on its registered agent in Delaware.  (ECF No. 4); *see Republic of Panama*, 119 F.3d at 942 ("Because the First American defendants are domestic corporations doing business in this country, the statutory basis for personal jurisdiction over these defendants is satisfied.").

As to Wimpfheimer, Wimpfheimer waived service of the summons and complaint.  (ECF No. 14); *see Lewis*, 530 F. Supp. 3d at 1209–10 & n.5.  Wimpfheimer is a partner of a New York-based law firm and member-owner of a Florida-based LLC, both of which are incorporated in Delaware.  The Amended Complaint attributes Wimpfheimer's conduct in this case as being on behalf of both Madison Gold and also on behalf of Wimpfheimer himself, though this separateness is conclusory as alleged in the Amended Complaint.  *E.g.*, (Am. Compl. ¶ 45); *see Don't Look Media*, 999 F.3d at 1295 ("A defendant 'transacts his affairs' in a district when he conducts substantial and continuous business within the district."); *accord Louis Vuitton*, 736 F.3d at 1355

(noting that, "under Florida law, [the] corporate shield doctrine is inapplicable where the corporate officer commits intentional torts").   Ultimately, though, whether the allegations against Wimpfheimer are attributable to him individually and are truly separate from the allegations against his corporate co-Defendants that he maintains interests in dovetails with the failure of the Amended Complaint to allege Plaintiffs' RICO claims with the specificity required by Rule 9(b).[4] This is all to say that statutory jurisdictional authorization is tied in with the merits of Plaintiffs' RICO claims.   Indeed, though the Moving Defendants assert that the RICO claims are not pled with the requisite specificity for fraud claims under Rule 9(b), the Court cannot say for purposes of personal jurisdiction that the RICO claims are frivolous such that Plaintiffs have not stated colorable claims; the Court assumes without deciding that Plaintiffs have asserted colorable RICO claims in light of the recommendation below that those claims have not been pled with the requisite specificity under Rule 9(b).

### b.       Due Process Under the Fifth Amendment

The Court must also assess whether the exercise of personal jurisdiction comports with due process.   This due process analysis is governed by the Fifth Amendment and not the Fourteenth Amendment.   *Republic of Panama*, 119 F.3d at 942.   The jurisdictional due process analysis under the Fifth Amendment is the same as under the Fourteenth Amendment, focusing on a defendant's purposeful, minimum contacts with the forum and on whether maintenance of the suit would offend traditional notions of fair play and substantial justice.   *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307–08 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023).

---

[4]  The undersigned recommends below that Plaintiffs be afforded leave to replead their RICO claims in compliance with Rule 9(b).

In arguing the inapplicability of the Florida long-arm statute, the Moving Defendants do not argue that SWA and Wimpfheimer lack minimum contacts with the United States. Rather, they assert only that the Florida long-arm statute does not authorize jurisdiction over Wimpfheimer and SWA. As to due process, they assert that SWA does not have minimum contacts with Florida.

However, the relevant forum is the United States for Fifth Amendment due process purposes. *SEC v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) ("The applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process."). SWA easily satisfies minimum contacts with the United States because it is a domestic entity. It is a law firm with its principal place of business in New York, organized under Delaware partnership law—SWA is at home in the United States. *See Daimler*, 571 U.S. at 137; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business.").

The analysis for Wimpfheimer differs. Though he is a United States citizen, he is domiciled in Israel. (Am. Compl. ¶ 12). For this Court to exercise personal jurisdiction over Wimpfheimer, he must have purposefully availed himself of the forum and Plaintiffs' claims must arise out of or relate to Wimpfheimer's contacts with the forum. *Ford Motor Co.*, 141 S. Ct. at 1024–25 (summarizing caselaw setting forth standard for specific personal jurisdiction); *see also Herederos*, 43 F.4th at 1310 ("To establish a non-resident defendant's minimum contacts with a forum for specific-jurisdiction purposes, (1) the plaintiff's claim must "arise out of or relate to" one of the defendant's contacts in the forum, (2) the defendant must have "purposefully availed"

itself of the privilege of conducting activities within the forum, and (3) jurisdiction must comport with "traditional notions of fair play and substantial justice.").

Again, the relevant forum is the United States.  The Moving Defendants do not argue in their Joint Motion that Wimpfheimer lacks minimum contacts with the United States.[5]  Rather, the allegations in the Amended Complaint include that Wimpfheimer prepared Master Participation Agreements on behalf of New York-based, Delaware-organized LLCs under which the Florida-based, Delaware-organized Defendant Madison Gold would invest pooled funding (essentially) to back merchant loans.  On behalf of United States-based entities, Wimpfheimer solicited investments for this pooled funding from United States-based Plaintiffs, who include a Missouri-based and organized partnership and an individual Plaintiff domiciled in Missouri.  These United States-based Plaintiffs invested money with Wimpfheimer's Florida-based LLC, co-Defendant Madison Gold.  Wimpfheimer failed to disclose and otherwise withheld information from the United States-based Plaintiffs regarding the United States-based investment scheme and regarding relationships among the United States investing entities.  Wimpfheimer's interests in various New York and Florida entities conflicted with his role as a licensed attorney at a New York-based law firm that was involved in the transactions.  And Wimpfheimer allegedly siphoned funds from Florida-based Defendant Madison Gold, thus constituting undisclosed self-dealing from a United States-based entity involved in the RICO scheme.

---

[5] To the extent Wimpfheimer argues under the corporate shield doctrine that personal jurisdiction over him cannot be premised on his actions as an agent of Madison Gold, the argument is made within the context of statutory authorization for personal jurisdiction pursuant to Florida's long-arm statute and not as a matter of constitutional due process.  *See* (ECF No. 30 at 5) ("Actions taken on behalf of Madison Gold by Wimpfheimer cannot subject him to personal jurisdiction under the long-arm statute.").  Notwithstanding, Plaintiffs allege that Wimpfheimer engaged in self-dealing involving the corporate entities at issue in this case, which Plaintiffs claim Wimpfheimer failed to disclose to them.  Plaintiffs also claim that Wimpfheimer dealt with them while operating under conflicts of interest involving these entities.

The Court finds Plaintiffs' RICO claims arise out of the foregoing United States-focused scheme involving Wimpfheimer's inducement of investments from United States persons based on misrepresentations and non-disclosures. *See Louis Vuitton*, 736 F.3d at 1356 ("Mosseri's ties to Florida all involve the advertising, selling, and distributing of alleged counterfeit and infringing Louis Vuitton goods into the state and accepting payment from Florida customers for such goods."). Based on these same facts, the Court further finds that Wimpfheimer purposefully availed himself of the United States. *See id.* at 1357 ("[W]e conclude that Mosseri purposefully availed himself of the Florida forum in such a way that he could reasonably foresee being haled into a Florida court. Mosseri purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website[.]").

"Once it has been established that a defendant has purposefully directed his activities at a particular forum, courts still should determine if the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Lewis*, 530 F. Supp. 3d at 1212. Within the context of § 1965(d), the Eleventh Circuit has explained that "to evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation." *Republic of Panama*, 119 F.3d at 946. However, "[o]nly when a defendant challenging jurisdiction has 'present[ed] a compelling case that . . . would render jurisdiction unreasonable,' should courts weigh the federal interests favoring the exercise of jurisdiction." *Id.* (second alteration in original) (omission in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

"[E]ven when a defendant resides within the United States, courts must ensure that requiring a defendant to litigate in plaintiff's chosen forum is not unconstitutionally burdensome."

*Id.* at 947.  The burden ultimately rests with the defendant objecting to personal jurisdiction to demonstrate that "the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* at 948 (quoting *Burger King*, 471 U.S. at 478) (internal quotation marks omitted) (alteration in original).

Wimpfheimer and SWA have not met this burden.  Neither of them has advanced any argument or evidence that litigating in Plaintiffs' chosen forum would be unconstitutionally burdensome with respect to personal jurisdiction, or that litigating in Florida puts them at a severe disadvantage relative to Plaintiffs.[6]  *See In re Takata*, 396 F. Supp. 3d at 1145.

In short, the Court finds that the exercise of personal jurisdiction over SWA and Wimpfheimer is authorized by statute and comports with due process.[7]

### B.    Forum Non Conveniens

In the Joint Motion, the Moving Defendants argue that it would be inconvenient and unjust for SWA to defend this suit in the Southern District of Florida.  They note that only one Party—Defendant Madison Gold—is located in this District.  The Moving Defendants assert that the state and federal courts of New York provide Plaintiffs with an adequate alternative forum to bring their claims against SWA and that there are "far more witnesses and documents in New York than there are in Florida."  (ECF No. 30 at 9).  In a footnote, the Moving Defendants cite to the

---

[6]  The Moving Defendants separately argue for dismissal on forum non conveniens grounds based on the availability of witnesses and discovery in New York and the inconvenience to SWA of having to travel from New York to Florida to defend this suit.  SWA and Wimpfheimer have not made these arguments with respect to personal jurisdiction.

[7]  Having found that the District Court may properly exercise personal jurisdiction over Madison Gold, SWA, and Wimpfheimer based on Plaintiffs' federal RICO claims, the doctrine of pendent personal jurisdiction permits personal jurisdiction over Madison Gold, SWA, and Wimpfheimer with respect to Plaintiffs' state-law claims asserted against those defendants, which all form a common nucleus of operative fact with Plaintiffs' federal RICO claims.  *See Koch*, 847 F. Supp. 2d at 1374; *In re Takata*, 396 F. Supp. 3d at 1168 (internal quotation marks omitted) ("The doctrine of pendent personal jurisdiction arises 'where a federal statute authorizes nationwide service of process and the federal and state claims derive from a common nucleus of operative facts.'").

federal transfer provision, 28 U.S.C. § 1404, suggesting that this action should be transferred, though they do not request transfer or identify the specific district to which this action should be transferred.  Again citing to matters not pled in the Amended Complaint and without attaching evidence, Plaintiffs respond that dismissal on forum non conveniens grounds would be improper. Plaintiffs argue that the Moving Defendants have not met their burden in this regard.

Putting aside that only one of the three Moving Defendants seeks dismissal of this action on forum non conveniens grounds, the Court finds that the Moving Defendants have not met their burden.  "*Forum non conveniens*, a common law doctrine, provides that a district court has inherent power to decline to hear a case in which there is proper jurisdiction and venue."  *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020).  "A defendant invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.'"  *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (quoting *Sinochem*, 549 U.S. at 430).  "The moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001).

SWA asserts in conclusory fashion that the state and federal courts of New York are adequate alternate forums.[8]  SWA otherwise argues, in substance, that the private interest factors weigh in favor of dismissal on forum non conveniens grounds.  This Court disagrees.  "The private interest factors the Court must consider include the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

---

[8]  The Court assumes without deciding that the state and federal courts in New York are adequate alternative forums.

the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Nygard v. DiPaolo*, No. 0:17-CV-60027-UU, 2017 WL 4303825, at *7 (S.D. Fla. May 23, 2017) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Here, SWA advances only conclusory assertions of inconvenience attendant to litigating this case in the Southern District of Florida. According to SWA, witnesses and documents are located in New York, but SWA makes no specific proffer regarding the extent of the evidence available there as opposed to here. Nor does SWA explain why modern electronic discovery methods are insufficient to minimize the burden of discovery across judicial districts. And with respect to witness availability, SWA does not address the possibility of remote depositions or the unavailability of compulsory process for trial. SWA's related, conclusory assertion of burden associated with travel between New York and Florida to defend the suit is likewise unsubstantiated and belied by the relative ease of travel between New York and South Florida. In sum, SWA has advanced no compelling reason in the Motion or Reply in favor of dismissing this action on forum non conveniens grounds to be refiled in the state courts of New York, or in favor of transferring this action to a federal district court in New York.

### C.    Sufficiency of Plaintiffs' RICO Claims

The Court next turns to the sufficiency of Plaintiffs' RICO claims. As to the substantive RICO claim in Count I, the Moving Defendants assert that Plaintiffs have failed to plead the predicate acts of their federal RICO claim against Wimpfheimer and Madison Gold with the requisite specificity required under Federal Rule of Civil Procedure 9(b). The Moving Defendants argue Plaintiffs' RICO claim in Count I is otherwise conclusory. As to the RICO conspiracy claim in Count II, the Moving Defendants argue that the claim must be dismissed because Plaintiffs' substantive RICO claim in Count I fails.

### 1.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim for relief for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's consideration is limited to the allegations in the complaint.  *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  All factual allegations are accepted as true and all reasonable inferences are drawn in the Plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

Although a plaintiff need not provide "detailed factual allegations," a complaint must provide "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.*  Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

### 2.      Count I

The Moving Defendants first argue that Plaintiffs have failed to plead the RICO predicate acts with the requisite specificity under Rule 9(b).  According to the Moving Defendants, the RICO predicates in Amended Complaint "do not allege (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants

gained by the alleged fraud." (ECF No. 30 at 12). The Moving Defendants assert that the Amended Complaint fails to "allege precisely who committed the wire fraud or money laundering, what the wire fraud or money laundering actually was, when it occurred, or how it occurred." (ECF No. 30 at 12). They assert that any predicate fraud claims cannot be based on criminal usury under New York or Delaware law.

Plaintiffs respond that they have adequately set forth the RICO predicate acts, additionally noting that the Amended Complaint states that many of the instances of wire fraud and money laundering are within the exclusive control of Wimpfheimer and Madison Gold and have been concealed from Plaintiffs. (ECF No. 40 at 13) (quoting Am. Compl. ¶ 126). Plaintiffs argue that they have stated in great detail how Wimpfheimer and Madison Gold have committed fraud.

In Count I, Plaintiffs assert a federal civil RICO claim against Wimpfheimer and Madison Gold, under 18 U.S.C. §§ 1962(c) and 1964(c). Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "In addition to creating criminal penalties for racketeering activities, the statute also created a private, civil cause of action. Thus, '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting 18 U.S.C. § 1964(c)). "To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Id.* "A civil plaintiff must also show (1) the

requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation.'"  *Id.* (internal quotation marks omitted) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282–83 (11th Cir. 2006)).

In this case, the RICO predicate acts alleged in the Amended Complaint consist of wire fraud and money laundering.  (Am. Compl. ¶ 125).  "Where a plaintiff's section 1962(c) claim is premised on a pattern of racketeering that consists of the predicate acts of mail and wire fraud, 'the substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal*, but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1361 (S.D. Fla. 2015) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

"[U]nder Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).  "In addition, the plaintiff must allege particular facts with respect to each individual defendant's participation in the fraud.  In other words, a plaintiff is required to set forth specific allegations as to each defendant that will fulfill the 'who, what, when, where and how' pertaining to the underlying fraud."  *Viridis*, 155 F. Supp. 3d at 1362 (S.D. Fla. 2015) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

The Amended Complaint defines the term "RICO Defendants" as both Wimpfheimer and Madison Gold.  (Am. Compl. ¶ 92).  Plaintiffs allege that Wimpfheimer and Madison Gold

conducted the affairs of the RICO enterprise from "on or before 2019 to the present time." (Am. Compl. ¶ 125). Notwithstanding, Plaintiffs allege three "example" predicate acts committed by the "RICO Defendants," consisting of two instances of wire fraud, in violation of 18 U.S.C. § 1343, and one instance of money laundering, in violation of 18 U.S.C. §§ 1956 and 1957. (Am. Compl. ¶ 125). The Amended Complaint incorporates all 91 paragraphs preceding Count I into that claim. But it does not meaningfully delineate which facts constituting the "who, what, when, where, and how" support which predicate RICO violation. Moreover, each of the three predicate violations alleged are asserted against the "RICO Defendants." Plaintiffs may not lump defendants together in this manner. *See Viridis*, 155 F. Supp. 3d at 1362 ("Based upon Plaintiffs' allegations within paragraph 138 of Plaintiffs' First Amended Complaint, it is clear that the acts and conduct of both Press and Silverman are lumped together with no distinction."). In this way, the Amended Complaint does not provide the requisite specificity. *Koch v. Royal Wine Merchants, Ltd.*, which dealt with an alleged RICO conspiracy to sell counterfeit bottles of expensive and rare wine, is instructive:

> The Complaint in this case reads like a novella, rich in detail about the overall scheme to defraud, but with gaping holes in its description of the predicate acts of wire and mail fraud. As previously indicated, a well-pled RICO claim must delineate at least two predicate acts—two distinct crimes of mail or wire fraud—committed in furtherance of the scheme to defraud. Each predicate act must be pled individually and be capable of standing on its own; i.e., it must contain all of the elements of the crime. The pleader may incorporate selected, numbered paragraphs by reference, but the claim must identify each predicate act by number; e.g., "Predicate Act # 1," "Predicate Act # 2," etc. Furthermore, for each predicate act, the claim must specify: (1) the date and place of the sale; (2) the identity of the seller; (3) the identity of the buyer; (4) the bottle or bottles involved in the transaction; (5) the misinformation on each label; (6) the price paid by the purchaser for each bottle in the transaction; (7) if a fax, e-mail, or telephonic communication was involved in any phase of the sale, or constituted an inducement to purchase, the date of the communication, the name of the maker (sender or speaker), the name of the recipient, and the content of the communication; and (8) if the mail or a private interstate common carrier was involved in the transaction, the specifics of that use.

847 F. Supp. 2d at 1377.

Further, Plaintiffs may not avoid application of Rule 9(b) on the assertion that it is not possible for them to "plead with particularity all instances of wire fraud and money laundering that advanced, furthered, executed, and concealed the scheme because the particulars of many communications are within the exclusive control and within the exclusive knowledge of the RICO Defendants; who have withheld and concealed from Plaintiffs that information despite repeated demand for the information."  (Am. Compl. ¶ 126); *see Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1233 n.20 (S.D. Fla. 2017) ("However, the Court does not agree that generalized, nonspecific, or conclusory statements about an enterprise or pattern of racketeering activity can overcome settled principle in the Eleventh Circuit that civil RICO claims, 'which are essentially a certain breed of fraud claims, must be pled with increased level of specificity.'").  Plaintiffs' authority to the contrary deals with allegations made upon "information and belief," which is not the pleading issue identified above.  *Cf. Humana Pharmacy Sols., Inc. v. Michelin*, No. 20-81361-CIV, 2021 WL 3403950, at *7 (S.D. Fla. June 15, 2021).

Accordingly, Count I should be dismissed with leave to replead.

### 3.    Count II

Count II of the Amended Complaint is a RICO conspiracy claim under 18 U.S.C. § 1962(d), asserted against Wimpfheimer, Madison Gold, and SWA.  "In order to state a civil RICO conspiracy claim, a plaintiff must 'allege an illegal agreement to violate a substantive provision of the RICO statute.'" *Viridis*, 155 F. Supp. 3d at 1365.  "As articulated by the Eleventh Circuit, where the complaint fails to state a substantive RICO claim, a RICO conspiracy allegation 'simply concludes that the defendants conspired and confederated to commit conduct which in itself does not constitute a RICO violation.'"  *Id.* (quoting *Jackson v. BellSouth Telecomm.*, 372

F.3d 1250, 1269 (11th Cir. 2004)).  Because the Court recommends dismissal of Plaintiffs'

substantive RICO claim with leave to amend, the Court necessarily recommends dismissal of

Plaintiffs' RICO conspiracy claim.  *See id.* at 1365–66 ("First and foremost, because Plaintiffs

have failed to adequately state a claim under section 1962(c), the Court must necessarily find that

Plaintiffs failed to state a claim for civil conspiracy under the RICO statutes.").

Accordingly, Count II should be dismissed based on the dismissal of Count I.

### D.     Supplemental Jurisdiction

Under 28 U.S.C. § 1367, the District Court may exercise its supplemental jurisdiction, "in

any civil action of which the district courts have original jurisdiction, . . . over all other claims that

are so related to claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

However, the District Court "may decline to exercise supplemental jurisdiction over a claim" for

which there is supplemental jurisdiction when "the district court has dismissed all claims over

which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3); *Engelhardt v. Paul Revere Life Ins.*,

139 F.3d 1346, 1350 (11th Cir. 1998).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance

of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  The

Eleventh Circuit encourages district courts to dismiss any remaining state claims when the federal

claims are dismissed prior to trial.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th

Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically

dismiss the pendent state claims as well.").  Dismissal of state law claims should usually be done

without prejudice so that plaintiff may seek relief in state court. *Id.* (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

Subject matter jurisdiction in this action is predicated upon federal question jurisdiction, under 28 U.S.C. § 1331.  With respect to Plaintiffs' eleven state law claims, Plaintiffs invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367.[9]  If the District Court accepts the undersigned's recommendation to dismiss Plaintiffs' RICO claims, no federal claims will remain; the District Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and dismiss Plaintiffs' state law claims without prejudice.

\*\*\*

In sum, the undersigned finds that the District Court may properly exercise personal jurisdiction over the Moving Defendants.  The undersigned further finds that SWA has not met its burden of establishing that dismissal on forum non conveniens grounds is appropriate.  Notwithstanding, the Amended Complaint should be dismissed with leave to amend to correct the pleading deficiencies identified above.

## III.   RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

(1)   The Joint Motion to Dismiss (ECF No. 30), filed by Defendants Madison Gold, LLC, Jan S. Wimpfheimer, and Schwell Wimpfheimer & Associates, LLC, should be **GRANTED**.

(2)   The Amended Complaint should be **DISMISSED, without prejudice**, as to all claims.  Plaintiffs should be afforded an opportunity to amend their RICO claims to correct the pleading deficiencies identified above.

---

[9]   Complete diversity of citizenship among the Parties is lacking in this case: the Amended Complaint alleges that Plaintiff Michael Hermelin, Plaintiff Joshua Hermelin, and Defendant Wimpfheimer all are domiciled in Israel.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Darrin P. Gayles, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITED** in Chambers at Miami, Florida this 13th day of February, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Darrin P. Gayles
Counsel of Record